### STUBBLEFIELD v. HAYWOOD.

[86 South. 295. No. 21235.]

DEEDS. *Conveyance of remainder reserving life estate in grantors held valid.*

A deed conveying the remainder to a grantee, but reserving a life estate to the grantors, is valid under section 2762, Code of 1906 (Hemingway's Code, section 2266), where it is signed and delivered, though the grantee's estate does not come into enjoyment or use until after the death of the grantors.

APPEAL from chancery court of Alcorn county.

HON. A. J. McINTYRE, Chancellor.

Suit by W. E. Holt against C. F. Stubblefield. Decree for plaintiff, and suit revived after his death by Henry Haywood, his executor, and defendant appeals. Reversed and remanded.

*W. J. Lamb,* for appellant.

We contend that the deed made by appellee and his wife, Mrs. Bell Holt, conveyed to the appellant a fee-simple title to the land, reserving to themselves only a life estate. *Hart* v. *Gardner,* 74 Miss. 159; *Henderson* v. *Mack,* 82 Ky. 379.

Applying this rule to construction laid down in that opinion, that the entire deed must be looked to, the court will first see in the granting part of the conveyance the appellee and his wife declared they had bargained, sold and conveyed to the appellant, his heirs and assigns, the land in controversy. In the last clause before the *habendum,* the appellee and his wife declare that they had conveyed all of their estate in said land, both in law and in equity, except the life estate.

A reading of the deed shows clearly and conclusively what was intended to be conveyed by the grantors when this deed was made, and also shows what their purpose was for making the deed, and how come them to make the deed, and how come the appellant to be made a deed of conveyance to this property. In order to sustain the opinion of the chancellor and carry out the idea contended for by the appellee, disjointed parts of the deed will have to be construed from the more enlightened and convincing parts of the deed.

Appellee based his contention on the first part of the clause after the granting clause. This clause declares two distinct intentions on the part of the grantors. The first is as follows: It is the intention of the parties of the first part to retain title in said land during their natural lives,

and upon the death of one, title passes to the other to be retained until death.

The second is as follows: "It is the intention of the parties of the first part to convey said premises and land in fee simple, to take effect at their death, to the party of the second part."

The second intention declared in this clause is consistent with every other part of the deed, and shows that the intention of the grantors was to convey this land in fee to the appellant, reserving a life estate to themselves.

The only thing in the deed inconsistent or in any way obscuring or conflicting with the deed in showing their intention to convey the land in fee, is the first part of this clause wherein they say they retain title in said land during their natural lives.

In the case of *Robinson* v. *Paynek*, 58 Miss. 709, we have the following: It gives way (meaning the *habendum* to the premises) of course as all rules of construction must, where there is one clear and unmistakably expressed intention. Rules of construction are intended only to assist in ascertaining intention, and must not be perverted into defeating it; but where two repugnant intentions have been expressed with equal clearness in the instrument, some rule for construing must be adopted. The wisdom of the rule is less important than its certainty, since men may differ as to the question of wisdom, but cannot err when the standard is definite and unmistakable, however arbitrary; indeed, the more arbitrary it is, the easier will it be of ascertainment. The particular rule under consideration here will not apply whereby if one plain intention can be deduced from the instrument as a whole, that intention must prevail, whether it be discovered in the first or last clause of the instrument."

Where there is one clear and unmistakably expressed intention on the part of the parties, all rules of construction must give way. We submit that in taking the deed as a whole, there can be only one clear and unmistakable

intention on the part of the grantors in this deed, and that was to convey the land to the appellant in fee simple, reserving to themselves only a life estate.

The opinion of the court in the case of *Hart* v. *Gardner, supra,* that the construction must be made upon the entire deed and not entirely upon disjointed parts of it. In the granting clause of this deed there is no doubt what the grantors conveyed, and that was a fee simple title to this land, reserving to themselves a life estate.

Now, applying the rule of construction laid down in the case of *Hart* v. *Gardner,* 74 Miss. 159; *Robinson* v. *Payne,* 58 Miss. 692, we submit that these seemingly conflicting clauses must yield to all of the other clauses of the deed in which there is no conflict, and the intention of the parties must be carried out.

We wish to especially call the court's attention to the case of *Williams v. Claiborne, et al.,* in 1 Smede & Marshall's Chy., page 362. Applying this principle to the case at bar, the clause in the deed causing the obscurity must be limited so as to make it conform to the purpose and intentions which the parties had in view at the time of the execution of the deed. 9 Wend. 209. *Williams* v. *Claiborne, et al.,* 1 Smede & Marshall's Chy. Rep. 355; *Nixon* v. *Carco,* 28 Miss. 425.

There can be no question about the intention and the object sought to be obtained by the parties to this deed being clear and easily discernible on the face of the deed. *Goosey et al.* v. *Goosey et al.,* 48 Miss. 217; *Atkinson* v. *Sinnott,* 67 Miss. 508; *Dunbar* v. *Aldridge,* 79 Miss. 698; *Bailey* v. *Lloyd,* 5 Russ. 344; ROMILLY, M. R. in *Young* v. *Smith,* 35 Beav. 90.

The premises or granting parts of this deed are clear and unambiguous, and by the authority cited they cannot be controlled by the recital part of this deed. The operative part of this deed uses language which can admit of no doubt as to what the grantors intended to do, and by this same authority it cannot be controlled by the recital clause following the same.

In the *habendum* the deed has this clause: "To have and to hold said granted premises with the appurtenances unto the party of the second part, after the death of party of the first part."

This clause is in direct conflict with the operative or granting part of the deed, and also in direct conflict with the clause just above the *habendum*. The law is plain as to which of these two clauses shall control when in conflict, and that is, the premises or granting clause shall control. *Robinson* v. *Payne*, 58 Miss. 708; (L. Wash on Real Prop., 41, 71; 1 Shars. Bal. Comm., 470.

We respectfully submit that under this authority the appellee is bound to fail, and the contention of the appellant should be sustained.

All decisions of this court are to the same effect, to-wit; that when the premises or granting clause is clear and certain and the *habendum* is in conflict with this clause, then the premise or granting clause controls and the *habendum* must yield. That being the case, we submit to the court that this is a good deed and there is only one construction that can be put on the same when you look to the entire deed and apply the principles of law that should govern in construction, and that is the grantors conveyed a fee simple estate in the land to the appellant.

The granting clause in the case at bar is almost word for word what the granting clause was in the case of *Robinson* v. *Payne, supra*. The case at bar is nothink like as strong a case for the appellee as the case of *Robinson* v. *Payne*, 708 and of *Dunbar* v. *Aldridge*, 79 Miss., 698.

We respectfully submit that on the face of the deed and the rules of law applicable to construing the same, the appellant is entitled to win.

*J. M. Boone*, for appellant.

The court erred in holding said instrument, exhibit to the bill, void on its face as a deed. We contend that the deed on its face is good without the aid of parol evidence.

The instrument has all the earmarks of a deed, the caption is "Mrs. Bell Holt and W. E. Holt deed to C. F. Stuggerfield," it begins "This indenture" as a deed would begin. It is signed and acknowledged in the regular form of acknowledgment for deeds. It is delivered and recorded as a deed would be. The operating, granting clause of the instrument is the regular form of a deed conveying the property in the present terms as follows: "And by these presents do grant, bargain, sell and convey to the party of the second part, his heirs and assigns," and after describing the property it provides "together with the appurtenances to said premises belonging and all estate of parties of the first part in the same," and then winds up with a general warranty clause in the usual form of a warranty deed.

The only thing that is in conflict with the above language is the effort on the part of the draftsman of the deed to insert the intention of the grantors between the granting clause and the description of the land. This clause says that "it is the intention of the parties of the first part to retain title to said land during their natural lives and upon the death of one the title will pass to the other to be retained until death." This is a complete thought, but there is another complete thought in the same sentence and can be read as follows: "It is the intention of the parties of the first part to convey said premises and land in fee simple to take effect at their death to party of the second part."

There is another subsequent clause in said deed quoted above in which the reservation is described as a life estate. It is perfectly clear, when we take into consideration the unqualified granting and operating clause of the deed to go with this reservation of the life estate, that the grantors intended only to reserve a life estate in said land, and it is also perfectly clear that they intended to grant and convey said land in present reserving possession only to the house situated thereon as is provided in the first clause after the description of the land which clause is as follows: "That parties of the first part have absolute

control over the house occupied by parties of the first part at present. This clause is absolutely antagonistic, or to say the least, wholly unnecessary, if the parties were attempting to retain title during their natural lives, and not intending simply to retain a life estate.

The *habendum* clause is in perfect harmony with similar clauses in a regular deed and provides: "to have and to hold the said granted premises with the appurtenances unto the party of the second part, after the death of the party of the first part, his heirs and assigns" and then proceeds to warrant the title to said premises unto the party of the second part against the claims of all persons except for taxes after the 1st day of January, 1915. That warranty is against themselves as well as all the balance of the world and is wholly inconsistent with the idea of retention of title during their lives. The phrase in said *habendum* clause above quoted "after the death of parties of the first part" can apply only to the appurtenances in said *habendum* referred to. The appurtenances in said *habendum* clause can only refer to the house on said lot. Its legal meaning is. "That which belongs to something else; something annexed to another thing more worthy as a principal, and which passes as an incident to it to a house or messuage." Black's Law Dictionary, Second Edition.

The deed having previously reserved the house, it was necessary in this *habendum* clause, in granting the premises, to reserve this possession of the appurtenances, to-wit, the house, and the reservation of the house during the life of the first parties is the only reservation or limitation in the *habendum* clause of said deed.

The general rule for the construction of deeds is that "it must be construed most strongly against the grantor." *Y. & M. V. Railroad* v. *Lakeview Traction Co.*, 100 Miss. 281. There is another general rule that needs no citation to sustain it, which is that an instrument must be so construed as to mean something rather than nothing, and if necessary to construe it as a deed to prevent declaring it null and void for any purpose, the general rule is that it

must be construed to be a deed, if possible.  8 R. L. C., 933.

It seems that the court below arrived at the nature and character of this instrument solely and alone from one clause therein, to-wit: The clause providing that first party retain title to said land during their natural lives; and, ignoring every other expression in said instrument, if that expression stood alone it would control, but surrounded, as it is, both by clauses prior and subsequent thereto in said instrument, it is perfectly clear that the grantors did not mean to reserve all title during their natural lives and if that phrase be accepted as the controlling phrase in the deed, then it necessarily destroys every other idea expressed in the deed.

The granting clause in this deed is a clear, full, complete grant of the property from the first party to the second party.  If it be conceded that the grantors meant to qualify said granting clause then it is void because clearly repugnant to the granting clause.  This granting clause is "to the second party, his heirs and assigns.  In *Robinson* v. *Payne,* 58 Miss. 708, it was said: "A conveyance to a grantee and his 'heirs' always gives the estate in fee simple, and it has been said that no words are so apt and appropriate for this purpose as the word 'heirs'."

This same case holds that "An attempt to convert the absolute fee conveyed by the granting clause into a life estate by the *habendum* cannot be done.  From the earliest times decisions are uniform that where there is a clear and manifest repugnance between the premises and *habendum* clause of the deed, the former must prevail; and the doctrine is no less well recognized and maintained now than in the days of Coke and Sir Matthew Hale."

We concede that this rule at times gives way where there is a clear and unmistakably expressed intention to the contrary; but we contend that in construing this instrument as a whole the intention must prevail, whether it be discovered in the first or the last clause of the instrument.  Under this rule, however, the court, in the *Robinson case, supra,* after arguing the conditions under

which the *habendum* clause might stand, although contrary to the granting clause, laid down the rule thus: "The rule simply is that where there is an irreconcible conflict between the two clauses, the granting clause must prevail."

In the case of *Barksdale* v. *Banks,* 92 Miss. 176, this court said: "Whatever is expressly granted, or convenanted, or promised, cannot be restricted or diminished by subsequent provision or restrictions; but general or doubtful clauses precedent may be explained by subsequent words and clauses not repugnant or contradictory to the express grant covenant, or promise."

This same court on the same page holds: "that all doubtful words and provisions are to be construed most strongly against the grantor is an ancient principle of the common law, which is recognized as a sound rule of construction by modern jurists."

In the case of *Y. & M. V. R. R.* v. *Traction Co.,* in discussing an exception in the deed in that case said: "It is manifest that this was inserted to protect the grantor on his covenants of warranty. If, however, it was not so intended it would be void because repugnant to the granting clause." Under these rules of construction the instrument in this case will prevail as a deed on account of the clear and unequivocal granting clause.

Now when we consider another rule of construction which is that the whole instrument must be looked to to arrive at the intention of the grantor, we claim that this granting clause is evidential, that the intention was to grant presently the land in this case. The *habendum* clause is equally evidential on this subject and the clause of the deed professing to express the intention in the deed wherein it says the intention of the party is to convey said premises and land in fee simple is evidential that the parties were intending to make a deed conveying this property.

When we consider another rule that all parts of a deed must be so harmonized, if possible, as to uphold the instrument as a valid instrument then we say that this granting

clause and *habendum* clause is absolutely meaningless unless we put the construction upon the clause expressing intention of the grantors that the grantor by the language retaining the title was attempting simply to retain a life estate.

To construe this deed to mean nothing, it necessarily means that this clause destroys, overrides and renders meaningless all other clauses in the deed including the granting clause and the warranty clause. This construction would be against the general rules of construction and would be permitting an inferior clause, which is in and of itself indefinite and uncertain, to destroy positive and unequivocal clauses in direct conflict therewith.

The granting clause surrenders to the *habendum* and covenant clause only when it takes the *habendum* clause and covenant clauses to make clear the granting clause; otherwise, the granting clause must prevail. *Tyler v. Lilly,* 81 Miss. 612.

Every clause in the deed, such as "taking effect at my death" must be subordinated to the granting clause where the granting clause is a clear and unambiguous present conveyance and grant. The different clauses in this deed can be harmonized one with the other by saying the intention of the grantor was to reserve a life estate, but they cannot be harmonized, nor can each clause be given its full meaning, or any meaning whatever, by holding that the deed is void on its face.

The deed shows on its face by the clause just preceding the *habendum* clause, to-wit: "together with the appurtenances to said premises belonging, and all estate, title and interest both in law and in equity except the life estate of the party of the first part in the same;" that what had been said before in the deed meant the reservation of a life estate, and this clause clearly conveys *in presenti* all estate, title and interest both in law and equity saving only the life estate. The exception in the deed that controls the use of the house during the life of the grantors is so contrary to the preceding clause retaining title that it necessarily

follows they did not intend to retain title and the reservation of the occupancy and control of the house shows clearly they intended to convey and deliver the balance of the property in said deed described *in presenti.*

It would be foolish to reserve occupancy of the house specifically if they had already reserved the whole estate, and this clause must be referred to in any proper effort to construe the instrument to arrive at the intention of the grantors therein.

In *Wall* v. *Wall,* 30 Miss. 9, a leading case on this subject in this state, it is held that if the conveyance takes effect *in presenti* to a certain extent it is valid as a deed. In the case at bar the grantors stood by the operating clause of this deed, which is a complete unqualified grant, and in harmony therewith turned over and delivered up the property, and it can easily be said that this language of the operating clause and the action of the parties thereunder is the taking of effect *in presenti* to a certain extent to say the least.

In *Rogers* v. *Rogers,* 43 So. the conveyance was to take effect and be of force after my death. The court held this a deed conveying the remainder interest after the termination of the life estate and warrants a title to it.

It is useless, however, to attempt to cite all the cases on this subject from this court and attempt to draw parallels for the reason that each case is controlled by the particular language used in the instrument being construed, and the facts and circumstances surrounding the parties being different, one case is no fixed criterion for another.

*W. C. Swaet,* for appellee.

The decree of the court below was based almost entirely upon the construction of the instrument executed by Mrs. Belle Holt and the appellee, W. E. Holt, to the appellant C. F. Stubblefield; and the decision here will rest on its construction.

Our contention is that this instrument cannot be construed as a deed; the contention of the appellant is that it

is a deed. The court below held that it is not a deed. It is true that the instrument is called a deed and that it begins in the manner in which deeds usually begin. It also names a consideration, as is usually done in deeds, but the clause which controls and which shows the real intention of the parties to the instrument is the following: "It is the intention of the parties of the first part to retain title in said lands during their natural lives, and upon the death of one, the title passes to the other to be retained until death and to convey said premises and land in fee simple to take effect at their deaths to the party of the second part."

This language is plain and unambiguous and the court will find no difficulty whatever in determining the character of the instrument when this clause is read in connection with all the other parts of the instrument. It is quite plain that the makers of the instrument did not intend to part with any title whatever to this property as long as either of them live. It is stated plainly and positively that they retain title to the lands during their natural lives, and that "upon the death of one, the title should pass to the other to be retained until death."

"The word 'title' is usually used in the sense of absolute ownership or fee simple estate." 32 Cyc. 679. To make it more positive and certain that the instrument is to have no effect whatever until the death of both of these parties, it is stated that: "It is our intention to convey said premises and land in fee simple, to take effect at our deaths to the party of the second part."

The instrument is to have no effect until they are both dead, what further words are necessary in order to ascertain this instrument is a testamentary disposition of property. Then follows the description of the property. After this follows the clause in which the appellant places his main reliance for a reversal in this cause: "Together with the appurtenances to said premises belonging and all estate, title and interest both in law and in equity, except the life estate of the parties of the first part in the same."

This clause alone would indicate that the instrument is a deed, reserving a life estate in the grantors, but when it is read in connection with the other parts of the instrument, it is shown very clearly that this phrase "except the life estate of the parties of the first part in the same" is not more than an inapt expression of the draftsman of the deed. If the instrument took effect at the deaths of the parties of the first part, it would leave in effect a life estate only in parties of the first part though not technically a life estate. However, this clause is followed by another in the *habendum* clause, to-wit: "To have and to hold the said granted premises, with the appurtenances, unto the party of the second part after the death of parties of the first part." This clause also shows that it is the intention of the parties of the first part that nothing shall pass, no title or interest, until their deaths, thus fastening a testamentary character upon it, showing that these old people did not intend that any title, any estate, or any appurtenances on these premises should pass to Stubblefield until after the death of each of them.

One of the leading cases in this state is that of *Wall* v. *Wall*, 30 Miss. 91, relied upon by appellant for a reversal of the cause, in which, it is true that the court holds that the instrument in that case is a deed. But the difference between the instrument in that case and the one in the case at bar is the following clause: "The deed to take effect as far as regards the handing over of the property at my death."

In passing upon that instrument, the court said: "Taking the part of the instrument by which the deed is to take effect, as far as regards the handing over of the property at my death, in connection with the subsequent part, declaring the execution of the deed and placing it among his papers is intended as a delivery of the property at his death and to take effect at that time, we think that the latter provision must be understood to mean, as to the delivery of the property, should take effect at his death and not that it should not take effect in any other respect until his death. *Wall* v. *Wall,* 30 Miss. 98.

The court further said in passing upon that instrument: "It is insisted that other parts of the instrument show clearly that it is intended to be testamentary. The parts mainly relied upon as showing this, is that declaring that the signing, sealing and delivery of this deed and placing the same amongst my papers is intended by me as a delivery of said property at my death, and to take effect at that time. If the legal character of the instrument depended entirely upon this provision, it would be difficult to avoid the conclusion, that it was not intended to take effect in any respect, until the maker's death. But its character must be determined upon a consideration of all of its parts."

It will thus be seen that the instrument in the *Wall* case, *supra* provided that it should not take effect so far as the handing over of the property is concerned until his death. There is no such provision in the instrument in the case at bar and no provision akin to it, but the stipulation is without limitation that it is to "take effect at their deaths" and it is stated twice in the instrument that it is to "take effect at their deaths." There can be no mistake as to what their intention was. The draftsman might possibly have made one mistake in the instrument, but he certainly would not have made the same mistake twice, and it is stated in two different places in the instrument that it is, "to take effect after their deaths."

There is a long line of decisions of this court in this state construing instruments of this character, having all of the earmarks of deeds; in fact, are called deeds in the face, but in which it is stated that the instrument is not to take effect until the death of the maker thereof; and this court has uniformly held, so far as I have been able to find, that when the instrument stated absolutely and without qualification, as does the instrument in the case at bar, that it is to take effect at the death or after the death of the maker, then it is testamentary in character and inoperative as a deed.

In the case of *Cunningham* v. *Davis*, 62 Miss. 366, the instrument under consideration was in the form of a deed. In fact it started out in the following manner: "This deed of conveyance, made and entered into by and between John W. Reynolds, of the first part and Saray A. Reynolds of the second part." It then went on to state the consideration, using the following words: "grant, bargain, sell" etc., and then this expression follows: "that this deed does not take effect until after my death." But in the instrument in the case at bar, this language was used: "To take effect at their deaths." Chief Justice CAMPBELL, in delivering the opinion of the court said: "In form, the instrument is a deed; it was so called by the maker. It was acknowledged as such by him before a justice of the peace. Its character must be determined from its several provisions. If by it any present interest was vested it should be held as a deed. If it was not to have any operation or effect until the death of the maker it could not be treated as a deed, although it was so named, and is in form a deed. The provision in these words, and that this deed do not take effect until after my death, coupled with the direction that the object of the bounty of the maker of the instrument should pay all his debts and have only the remainder of his property, convinces us that the paper was testamentary in character. *Cunningham* v. *Davis*, 62 Miss. 368.

The instrument in that case was just as much in the form of a deed as the instrument in the case at bar. It stated a consideration, as does the instrument in this case. It used the words "bargain, sell and convey," as in the instrument in the case at bar. It is called a deed, as in the case at bar.

It appears to me that the instrument here in question has more of the earmarks of a testamentary disposition of property than the instrument in the case of *Cunningham* v. *Davis*. There are a number of recent decisions of this court construing instruments similar in all respects to the one here in controversy. The most recent one is that of *Kelly* v. *Covington*, 119 Miss. 658, 81 So. 485. In that

case the instrument was in the form of a deed, states a consideration and has the clause of general warranty. It provides further that the grantee shall receive the rents and income from the premises. The only clause in the instrument there in consideration which stamps it as a deed is the following: "But this conveyance is not to take place until the death of the first parties at which time it shall be in force and effect." It was acknowledged as a deed, recorded as such and was evidently delivered. Through this instrument is called a contract, the first part of it is similar to a deed. Following, however, that part is the sentence: "But this conveyance is not to take effect until the death of the first party, at which time it shall be in full force and effect, only to be defeated by a failure of consideration herein named by the party of the second part.

This sentence expressly states that the instrument is not to be operative until the death of Mrs. Payne, the last clause in the instrument in realty conveys nothing but states that Kelly is to receive the rents and the income and defray the expenses during his occupancy. But he has not conveyed the right of possession nor anything else.

The plain and unambiguous part of the instrument is that part which states that it shall not take effect "until the death of Mrs. Payne." *Kelly* v. *Covington,* 119 Miss. 658, 81 So. 485. In the case of *Cox* v. *Reed,* 113 Miss. 488, 74 So. 330, the instrument there in question was very much like the one here in controversy.

It will be noted that the instrument there was in the form of a deed. It stated a consideration, had covenants of warranty, was signed and acknowledged as a deed, and delivered and recorded as such, and it would have been a good deed had it not been for this clause: "This deed shall take and be in effect on and after the death of myself and wife."

In the case at bar the instrument is a good deed to the point where it is stated that the title is to be retained by the makers "during their natural lives and upon the death of one the title passes to the other, to be retained until

death, and then that the instrument is to take effect at their deaths.

In the case of Thomas v. Byrd, 112 Miss. 692, which is comparatively recent, the instrument in question had very little, as compared with the instrument here, to show that it was testamentary in character; there was no positive statement that it was not to take effect until death, but the court said that the instrument did not convey any property "to vest either immediately or in the future, but that the object sought to be accomplished was to cause whatever property each of the parties thereto might own at his death to vest, when that event should occur in the surviving party or parties, and that the instrument therefore was testamentary in character.

Taking all of the decisions of this court above cited and it will be seen that this court has not deviated from the rule that when it is clear from the face of the instrument that it is not to take effect until the death of the maker, it could not operate as a deed.

The only cases which I have been able to find in which such an instrument has been held by this court to be a deed and where the expression "to take effect at the death of the maker" is used is that of *Wall* v. *Wall, supra,* and *Rogers* v. *Rogers,* 43 So. 434. In the case of Wall the court said, in effect, that if this expression had not been coupled with the further expression "in so far as the handling over of my property is concerned," that it would have been held to have been a will. The case of *Rogers* v. *Rogers,* has been by implication overruled by a number of recent decisions of this court, above cited. In view of all of these decisions, it is difficult to see how the appellant can expect the court to hold that the instrument in the case at bar is a deed.

It is true, as said by counsel for appellant, that "each instrument must stand or fall on its own terms," but in construing the instrument in this cause, the court will be governed to a large extent by the decisions of this court in construction of similar instruments; that they are testa-

mentary in character and have no effect as a deed. If the court should hold that the instrument in this case is a deed, such holding will necessarily overrule the decisions of this court in the following cases: *Sartor* v. *Sartor,* 39 Miss. 772; *Cunningham* v. *Davis,* 62 Miss. 366; *Simpson* v. *Mc-Gee,* 112 Miss. 344, 73 So. 55; *Thomas* v. *Byrd,* 112 Miss. 692, 73 So. 725; *Cox* v. *Reed,* 113 Miss. 488, 74 So. 330; *Martin* v. *Graham,* 114 Miss, 653, 75 So. 447; *Kelly* v. *Covington,* 119 Miss. 658, 81 So. 485.

The court will certainly not do this. The decisions are so numerous and of such long standing that they are now and have been for some time, a rule of property in the state of Mississippi, and certainly a rule governing the disposition of property to such an extent that all the citizens of the state have notice thereof. Furthermore, these decisions of this court, as I understand them, are in harmony with the great weight of authority.

ETHRIDGE, J., delivered the opinion of the court.

Some years prior to 1914 W. E. Holt and his wife, Mrs. Bell Holt, moved to the state of Mississippi and acquired certain property situated here. In the year 1914 they executed a certain instrument to C. F. Stubblefield, the appellant, reciting:

"For and in consideration of the sum of one dollar, and the further consideration of the party of the second part moving upon the following described premises, and working said lands, and the further consideration of the party of the second part caring for and supporting the parties of the first part their natural lives, the receipt of which is hereby acknowledged, have bargained, granted, sold and conveyed and by these presents do grant, bargain, sell and convey to the party of the second part, his heirs and assigns, the remainder of the following described tract of land;

"It is the intention of the parties of the first part to retain title in said lands during their natural lives and upon the death of one, title passes to the other to be retained un-

til death, and to convey said premises and land in fee simple to take effect at their deaths, to the party of the second part. (Here follows description of the premises.)

"The parties of the first part have absolute control over the house now occupied by parties of the first part at present, and for the same consideration the parties of the first part bargain, sell, convey, and by these presents do bargain, sell, convey and deliver, all farm tools on said premises, together with all live stock.

"Together with the appurtenances to said premises belonging and all estate, title and interest both in law and in equity, except the life estates, of the parties of the first part in the same.

"To have and to hold the said granted premises with the appurtenances unto the party of the second part, after the deaths of parties of the first part, his heirs and assigns, and the party of the first part will ever defend the title to said premises unto the part of the second part against the claims of all persons except for taxes, after the first of Jan. 1915, but during the lives of the first parties, the party of the second part agrees to pay taxes on said lands."

And this instrument was acknowledged by the said W. E. and Mrs. Bell Holt and delivered to Stubblefield and placed on record. Stubblefield removed from the state of Illinois upon the premises so described, and proceeded to, and did, perform the obligations on his part until the year 1917 when Mrs. Bell Holt died. W. E. Holt continued to live on the place until May the following year, when he moved away, claiming that he was mistreated by Stubblefield and his family. Stubblefield was a stepson of Mrs. Bell Holt, and she had reared him from his early youth up until he was some fifteen years of age and subsequent to a marriage with W. E. Holt.

W. E. Holt filed a bill in the chancery court setting out the execution of the said instrument and setting out that he was old, feeble, and blind and unable to earn a living, and at the time of the making of the said instrument that he and his wife were both old and feeble, and that they had

confidence in Stubblefield, and that Stubblefield had approached them with the proposition to take care of them for their lives, provided they would convey their property to him.

It is further alleged that complainant did not know at the time of the execution of the instrument, but now knows that it was not the intention of the defendant, the grantee, to carry out said agreement, but that he fraudulently induced the complainant and his wife to execute the instrument for the purpose of acquiring their property.

The defendant denied the allegations of the bill, seeking to void the instrument, and denied that he had procured the execution of the instrument, but that he had accepted the proposition made by Holt and his wife, and admitted the execution of the instrument, and averred that he and his family had treated the defendant and his wife with kindness and consideration, and had performed the obligations on his part up until the time Holt left the premises. There was evidence taken both in support of the allegations of mistreatment and in denial of such allegations. The draftsman of this instrument, who was a lawyer, was introduced in evidence, and testified to the understanding of the parties at the time the deed was drawn. He said the parties all came to his office and desired him to draw a deed stating the considerations, and that he suggested the drawing of a will and that Mr. and Mrs. Holt said that was not what they wanted to do, and that Mr. Stubblefield said that that was not their contract, and that he had come down here at their solicitation and for their benefit, and did not care anything about it if they did not want to make the deed; he did not care to come here, and that he (the draftsman) suggested the putting of the provision for support in the deed, and that Mr. and Mrs. Holt said they did not care anything about that, that they had plenty to support themselves, and that Mr. Stubblefield said he was willing to support them and agreed for the provision to be put in there; that Mr. Stubblefield was to take charge of the farm at once, and that they intended to con-

vey the title to Mr. Stubblefield at once, but they would use the home during their natural lives, and at the end of their lives Mr. Stubblefield was to take possession of the house. This testimony was objected to as being incompetent, and the chancellor reserved ruling. The chancellor held the instrument invalid and inoperative as a deed, and that it was testamentary in character, but not operative as a will, because not properly witnessed, and entered a decree, cancelling the instrument and awarding possession of the property to Holt. Since the decree below Holt has died, and his executor has revived the suit in his name.

The question presented here for decision is whether the instrument above set out operates as a deed. While the deed is inaptly drawn, yet we think a careful consideration of all its provisions leads to the conclusion that it is a deed, and that it reserves to the grantors the life estate until the death of the surviving grantors. It is well settled in this state that the test is whether the instrument is to have effect as an instrument of conveyance at the time of its execution, though the enjoyment of the estate may be postponed to a fixed date, or it may become effective at the death of the grantor or grantors, or at any other time in the future; or whether the conveyance, or instrument, as such, is to take effect at or after death.

Section 2762, Code of 1906 (Hemingway's Code, section 2266), reads as follows:

"Any interest in or claim to land may be conveyed, to vest immediately or in the future, by writing signed and delivered; and such writing shall have the effect to transfer, according to its terms, the title of the person signing and delivering it, with all its instruments, as fully and perfectly as if it were transferred by feoffment with livery of seizin, notwithstanding there may be an adverse possession thereof."

It will be seen from an analysis of this statute that the land or interest conveyed may be made to vest immediately or in the future if made by a writing signed and delivered; and that such writing shall have the effect to transfer ac-

cording to its terms the title of the person signing· and delivering it.

It is insisted by the appellee, and was perhaps the view of the court below, that this case is controlled by the case of *Kelly* v. *Covington,* 119 Miss. 658, 81 So. 485. In the deed considered in that case it was expressly stipulated:

"But this conveyance is not to take effect until the death of the first party, at which time it shall be in full force and effect, only to be defeated by a failure of considerations herein named by the party of the second party."

It was the conveyance that was not to take effect in that case and not the estate conveyed.

In the present case the language is not identical, and it is not the conveyance that is postponed, but it is the enjoyment of the estate. The deed conveys the remainder to the grantee in terms; that is, followed by language attempted to grant a life estate. It is true that the word "title" is used in this clause, that is to say, "to retain title during their natural lives," but in the subsequent clause it is clearly shown that a life estate was contemplated, and such life estate is expressly excepted out of the *habendum* clause.

It seems to us clear on the face of the deed, construing all of its provisions together, that the intention of the parties was to reserve a life estate in the grantors and convey the remainder to the grantee, the grantee to come into possession or use of the property at the death of the surviving grantor.

We therefore reach the conclusion that the chancellor was in error in holding that the deed was invalid, and the judgment will be reversed, and the cause remanded, to be proceeded with, if the complainant desires, on the alternative prayer of the bill.

*Reversed and remanded.*